IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LA'MONT WALKER,

                    Plaintiff,

    v.

BURTON COX, SONYA ANDERSON,
JOLINDA WATERMAN, CARRIE SUTTER,
JONI SHANNON-SHARPE, and
JERRY SWEENEY,

                    Defendants.

OPINION & ORDER

15-cv-686-jdp

---

Pro se plaintiff La'Mont Walker, an inmate at the Wisconsin Secure Program Facility (WSPF), brings Eighth Amendment claims against Wisconsin Department of Corrections (DOC) employees for their alleged failure to provide him an extra mattress and other accommodations for his chronic back pain. The parties have filed dueling motions for summary judgment, and Walker has filed a motion for preliminary injunctive relief.[1] I will deny Walker's summary judgment motion and grant defendants' summary judgment motion regarding most of Walker's claims. But I will stay a decision on portions of Walker's claim against defendant Burton Cox and have the parties present supplemental briefing on how Cox responded to Walker's back problem for certain periods of Walker's incarceration. Also, I will deny Walker's motion for preliminary injunctive relief.

---

[1] Walker has also filed two motions for the court to issue a ruling on his motions, Dkt. 62 and Dkt. 65, which I will grant in issuing this decision.

UNDISPUTED FACTS

The following facts are drawn from the parties' summary judgment materials, and are undisputed unless noted otherwise.

A. **Parties**

Pro se plaintiff La'Mont Walker has been confined by the DOC at WSPF from December 2010 to the present. Defendant Burton Cox is a DOC physician who worked at WSPF from January 2003 until July 2015. The remaining defendants are employees at WSPF and were members of at least one of the "Special Needs Committees" that reviewed Walker's requests for an extra mattress. Defendant Sonya Anderson is a nurse, defendant Jolinda Waterman is the nursing supervisor, defendant Carrie Sutter is the financial program supervisor, defendant Joni Shannon-Sharpe is a lieutenant, and defendant Jerry Sweeney is the security director.

B. **Walker's interactions with defendant Cox**

Walker suffers from chronic back pain.[2] In 2011 and 2012 he complained verbally to defendant Cox that the segregation mattresses were giving him back pain and requested an extra mattress.

On July 31, 2013, Walker submitted a health service request (HSR) form, complaining of lower back pain "for quite some time" due to the mattresses. Cox responded that the Special Needs Committee decides extra mattress requests. There is no indication that Cox referred

---

[2] Walker also says that his pain radiated into his legs, causing him to become temporarily paralyzed. *See* Dkt. 40, at 2, ¶ 8. But the medical and psychological records he uses to support this finding do not state that he told medical staff about his temporary paralysis.

Walker's request to the Special Needs Committee. I discuss the Special Needs Committee's policies and its decisions regarding Walker's requests below.

On May 8, 2014, Cox saw Walker for complaints of spine pain. Cox assessed Walker with "chronic pain at the junction of the thoracic and lumbar spine due to musculoskeletal causes." Cox ordered an x-ray, referred Walker to physical therapy, and noted that he did not prescribe NSAIDS (nonsteroidal anti-inflammatory drugs) because they upset Walker's stomach. From July 8, 2014 to August 19, 2014, Walker had five sessions of physical therapy. After the fifth session, the therapist noted that Walker was rehabilitated to his maximum potential and that no further progress was expected from physical therapy.

On August 27, 2014, Walker submitted an HSR form, complaining of back pain. Cox responded that his back issue was not a surgical problem, leaving physical therapy as the treatment option. Cox also noted that medications were not of much use and that Walker could not have a TENS (transcutaneous electrical nerve stimulation) unit while in segregation, because the units have batteries that can generate an electrical charge.

On October 20, 2014, Cox saw Walker for a follow up regarding his back pain. Cox noted that Walker's x-rays were unremarkable, that Walker had five physical therapy visits with no benefit, and that Walker could have a TENS unit when he was back in general population. Cox did not order further physical therapy for Walker.

On November 23, 2014, Walker submitted an HSR form, complaining of back pain and requesting an extra mattress. Cox referred Walker's request to the Special Needs Committee. The Special Needs Committee denied Walker's request on January 22, 2015.

While Walker's mattress request was pending before the Special Needs Committee, he had several interactions with Cox. On December 4 and 17, 2014, Walker submitted HSR

3

forms, asking for a TENS unit and an extra mattress. Cox responded that the issue had already been addressed. On January 7, 2015, Walker submitted an HSR form, stating that he had been discharged from physical therapy and asking about additional sessions. Cox responded that inmates get six initial sessions and the physical therapist can add six more if they request it, but that this wasn't warranted in Walker's case, due to his lack of progress.

On May 24, 2015, Walker submitted an HSR form, complaining of chronic back pain and requesting a back brace and theraband. Cox responded that he did not recommend back braces and that therabands are usually ordered through physical therapy. Walker again requested a theraband in an HSR form submitted June 1, 2015, and Cox granted this request on June 5, 2015. Cox left WSPF in July 2015.

**C. Walker's requests to the Special Needs Committee**

Prior to filing his complaint, Walker's requests for an extra mattress were referred to the Special Needs Committee ("the committee") three times.

Prescribing practitioners do not directly order certain "special needs" or "comfort" items for inmates at WSPF. Instead, they refer the requests to the committee, which has the authority to grant or deny the requests. Items that must be requested include extra mattresses, extra pillows, crutches, and disposable medical items, as well as beard trimmers and non-standard shoes. The committee has rotating membership but it usually consists of members such as the segregation unit manager, nurses, unit managers, employees from the business office, the deputy warden, security liaisons, or the security director. Doctors do not sit on the committee.

To decide whether to grant a special needs request, the committee follows DOC Health Services Policy and Procedures # 300.07 and Appendix 1 to that policy, which outlines protocols for specific items. The policy states that "[a] significant medical/dental condition

which clearly indicates that a restriction/special need is medically necessary must exist for health services to get involved."[3] Dkt. 32-4, at 2. Provision of a double mattress or extra-thick mattress is limited to certain conditions: the inmate must have (1) a severe disabling degenerative joint disease; (2) a pregnancy of at least 20 weeks; or (3) just had a joint replaced. *Id*.

When applying Policy 300.07 to Walker's extra mattress requests, the committee went through the following procedure. The medical members on the committee first reviewed Walker's medical file to find whether he met any of the criteria in Appendix 1. After reviewing his file, the medical members informed the non-medical members of the committee whether Walker met any of the criteria.[4] The entire committee then made a decision regarding Walker's request.

Walker's request for an extra mattress was first referred to the Special Needs Committee on November 23, 2014. On January 22, 2015, the committee (consisting of defendants Anderson, Waterman, Sutter, Shannon-Sharpe, and Sweeney) denied Walker's request for an extra mattress. In its letter to Walker, the committee wrote that he did not have a significant medical condition that clearly indicated that the special need was medically necessary, citing Policy 300.07, Appendix 1.

---

[3] The part of the appendix discussing mattresses states that "[d]ouble mattresses should not be used. Use thick mattresses only." Dkt. 32-5, at 2. But none of the committee's denials appear to be premised on Walker asking for a specific item not allowed at WSPF, and throughout their summary judgment materials the parties talk about the extra mattresses as if they could be granted by the committee. Walker also provides testimony from another inmate stating that he received a double mattress. At this point I will assume that the committee could, in practice, issue a double mattress.

[4] Walker alleges that the non-medical members of the Special Needs Committee reviewed his file without his consent, but he has not submitted any evidence to support this assertion.

5

Walker's request for an extra mattress was referred to the Special Needs Committee for the second time on July 18, 2015. On September 2, 2015, the committee (consisting of defendants Anderson, Waterman, and Sweeney, along with two other WSPF employees) denied his request, citing Policy 300.07. The denial letter also informed Walker that the unit manager would check the condition of his mattress. Walker received a new, thick mattress in September 2015.

D. **Further treatment**

Walker received more treatment following the date of his complaint in this action. On September 13, 2015, Walker submitted an HSR form, asking for a new theraband, an ice bag, a back brace, massage therapy, and an extra mattress. Walker complained that he was given a replacement mattress, instead of being allowed to keep two. A nurse referred his mattress request to the Special Needs Committee. She also responded that there was no order for a back brace, that WSPF does not provide massage therapy, that Walker could receive another theraband if he exchanged his old one, and that Walker could receive an ice bag after a nursing assessment. Walker was approved for ice on September 26, 2015. On October 9, 2015, the Special Needs Committee (consisting of defendants Anderson, Waterman, Shannon-Sharpe, and one other WSPF employee) denied Walker's extra mattress request, citing Policy 300.07.

Walker received new mattresses on two occasions, in December 2015 and April 6, 2016. He has also received a TENS unit while in general population, his ice accommodation has been granted several times, and in 2016 he was granted an extra pillow and a back brace. Since 2016 he has also been prescribed several medications, such as Cyclobenzaprine (a muscle relaxer), Tylenol, and Tramadol (a narcotic pain reliever).

ANALYSIS

I granted Walker leave to proceed on Eighth Amendment claims against defendant Cox for failing to properly treat his back problems by refusing to issue him an extra mattress or other accommodation for the severe back pain and stiffness he suffers. I also granted him leave to proceed against defendants Anderson, Waterman, Sutter, Shannon-Sharpe, and Sweeney in their individual capacities for denying his Special Needs Committee requests, and in their official capacities for the committee policy allowing non-medical staff to make decisions about medical issues.

A. **Summary judgment**

Summary judgment is appropriate if a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When, as here, the parties have filed cross-motions for summary judgment, the court "look[s] to the burden of proof that each party would bear on an issue of trial; [and] then require[s] that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997). If either party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment against that party is appropriate. *Mid Am. Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995) (quoting *Tatalovich v. City of Superior*, 904 F.2d 1135, 1139 (7th Cir. 1990)). "As with any summary judgment motion, this [c]ourt reviews these cross-motions 'construing all facts, and drawing all reasonable inferences from those facts, in favor of . . . the

non-moving party.'" *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008) (quoting *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 748 (7th Cir. 2007)).

The Eighth Amendment prohibits prison officials from acting with deliberate indifference to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*, 444 F.3d 579, 584–85 (7th Cir. 2006). A medical need may be serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371–73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). The parties do not appear to be disputing that Walker's back pain gave rise to a serious medical need.

To be considered "deliberately indifferent," an official must know of and disregard "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

1. **Defendant Cox**

Walker focuses on Cox's refusal to provide him with an extra mattress. Walker says that his mattress was "raggedy" and felt like concrete. In that circumstance, it stands to reason that

an extra mattress might provide some relief for a person suffering from back pain. But the Eighth Amendment does not entitle an inmate to demand *specific* care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). The question is whether the treatment the doctor does provide violates the Eighth Amendment because it is "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person[s] responsible actually did not base the decision on such a judgment." *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008). Walker does not have the medical background to be able to testify that an extra mattress was the only medically appropriate treatment, nor does it make sense to think that this is the case. There are many other treatments that might also be effective, many of which were prescribed to Walker at one time or another.

But I will not dismiss the entire case just because Walker focuses largely on the extra mattress. The question is whether defendants were deliberately indifferent to his serious medical need. In his complaint, Walker states that Cox "did not recommend nor attempt to provide me with a medical restriction for an extra mattress . . . or any other instrument to [alleviate] my chronic back pain." Dkt. 1, at 4.

But for at least some of the time Walker focuses on in his complaint, Cox clearly attempted to treat Walker's back pain. He referred Walker to physical therapy in May 2014, and he also ordered an x-ray and noted that he would not prescribe NSAIDs because they upset Walker's stomach. Walker had physical therapy sessions from July 8, 2014 until August 19, 2014. Following Walker's request for a TENS unit, Cox told him that he could not have the device in segregation, but that he could have it when he was in general population. On November 23, 2014, Walker requested an extra mattress, which Cox referred to the Special

9

Needs Committee.[5] So from May to November 2014, the undisputed facts show that Cox made efforts to address Walker's back pain. No reasonable jury could conclude that Cox's treatment choices were so far outside the scope of accepted medical judgment that they show deliberate indifference on his part.

One aspect of Walker's claim against defendant Cox is that he persisted in prescribing him to undergo physical therapy even after he knew that the therapy was not working. Walker is correct that deliberate indifference could be proven by showing that the doctor provided a type of treatment but persisted with that treatment even after the doctor knew it was not working. *See Gonzalez v. Feinerman*, 663 F.3d 311, 314 (7th Cir. 2011) (physicians are "obligated not to persist in ineffective treatment"). But that theory is contradicted by the undisputed facts, which show that Cox made an initial referral for six sessions of physical therapy and then chose *not* to order further therapy because it was ineffective. No reasonable jury could look at Cox's therapy decisions and conclude that he persisted in ineffective treatment. Rather, he cut it off when he learned it didn't work. I will grant defendants' motion for summary judgment on Walker's claim from May to November 2014.

But that leaves the rest of the time mentioned in Walker's complaint, 2011 to May 2014, and November 2014 to July 2015. Walker alleged and maintains at summary judgment that Cox did not do *anything* to address his pain for this first long portion of time, and the records seem to show that Cox did nothing for him after November 2014 other than issue a

---

[5] Walker contends that Cox actually had the ability to issue extra mattresses for inmates and presents testimony from another inmate, John Gross, who says that Cox issued him an extra mattress. But the evidence Gross uses to support this is a "Medical Restrictions/Special Needs" form that does not show that Cox or another doctor approved the request. Rather, it shows that the request for extra mattress was approved by Brian Kool, Mary Miller, and A. Connelly, which I take to be a Special Needs Committee approval. Dkt. 45-1.

theraband in June 2015. In fact, Cox states that he "had nothing more to offer Walker" at this point. Dkt. 52, at 5, ¶ 20. This seems questionable in light of the long list of treatments Walker was given after Cox left the prison, which I discuss further below regarding Walker's request for preliminary injunctive relief. But for his part, Walker provides almost no detail about how and when he sought Cox's help during these time periods, and it is his burden to present evidence supporting his claims. Because I am unconvinced that I have received the parties' full versions of these events, I will direct them to submit a round of supplemental proposed findings and supporting evidence concerning Cox's treatment from 2011 to May 2014, and from November 2014 to September 2015. The parties are free to submit supplemental briefs as well if they so choose.

   2. **Special Needs Committee**

Walker brings two types of claims against the defendant members of the Special Needs Committees that oversaw his extra mattress requests: (1) individual capacity claims for the two instances the committee denied his requests;[6] and (2) official-capacity claims under the theory that the committee policy is itself unconstitutional because non-medical professionals are involved in the decision-making process on medical treatments. I will grant summary judgment to defendants on both claims.

Even on his individual-capacity claims, Walker contends that all of the defendants were deliberately indifferent because they allowed the non-medical-personnel majority of the committee to steer the decisions, leading to the committee rejecting his requests. I understand why he might think this is the case. From statements made in the Special Needs Committee

---

[6] Walker's complaint is dated September 17, 2015, so I am considering only the committee decisions made before that day.

11

policy, I can infer that DOC officials created the policy at least in part because they believed that medical professionals overprescribed accommodations in the past and they decided that doctors and nurses alone should not be the sole decision makers on requests for accommodations. *See* Dkt. 32-4, at 2–3. ("Prescribing practitioners shall refer items to the committee/nurse for review of special needs rather than write orders for specific items."; "The security level and physical environment of the facility must be considered when authorizing special needs/restrictions. Alternatives shall be considered"; "Comfort Items shall not be approved by HSU. The most common incorrect assumption about such items is that they are medically necessary for proper medical care. This is not the case for the vast majority of medical conditions. Requests for these types of items are not medical issues. HSU staff is encouraged to allow only those treatment items which have been scientifically shown to provide solid medical benefit, and to treat significant medical conditions.").

Because non-medical personnel were clearly involved in the decisions, they could be liable under the Eighth Amendment if they countermanded recommendations by medical professionals, ignored the rules for how they were supposed to make decisions, or blindly followed a policy that clearly harmed prisoners. But the record does not support any of these theories. Walker does not present any evidence indicating that the non-medical members of the committee overruled the medical staffers. Rather, it is undisputed that the committee members with medical backgrounds reviewed Walker's file and advised the whole committee about whether he met any of the criteria. The committee then followed the policy, rejecting his requests because he was not diagnosed with one of the serious maladies listed in the policy that might warrant provision of an extra mattress. Walker has not been diagnosed with severe disabling degenerative joint disease, which is the only malady listed that could possibly match

Walker's reported symptoms. Moreover, as part of the second rejection, the committee told Walker that the unit manager would check the condition of his existing mattress, and he was provided with a new, thick mattress within two weeks. Far from deliberate indifference, this shows that the committee referred the request to someone else who could assist Walker with his problem.

This still leaves the official-capacity claim, that the very nature of the policy violates Walker's constitutional rights. But Walker comes nowhere close to showing that this is the case, particularly in light of the rigorous standards this court must uphold in granting injunctive relief in the prison context. *See* 18 U.S.C. § 3626(a)(1)(A) ("Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."); *see also Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) ("[P]rison officials have broad administrative and discretionary authority over the institutions they manage." (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983))).

There is nothing inherently unconstitutional about allowing security staff to have input about the distribution of comfort items in prison cells, and Walker fails to show that this input harmed him. The record shows that prison medical staff has many different types of treatment they may provide someone with back pain; the policy at most helped to foreclose one particular type of comfort item. But as I stated above, Walker generally does not have the right to any *specific* medical treatment, and he also fails to show, in the context of all the other treatments

13

that were attempted, that he was harmed specifically because he did not receive a double mattress. Because Walker fails to present facts showing that the Special Needs Committee policy itself is unconstitutional, I will grant defendants' motion for summary judgment on his official-capacity claim.

B. **Preliminary injunction**

Walker has filed a motion for preliminary injunctive relief. Dkt. 27. He wants the court to direct defendants to provide him with an extra mattress.

A preliminary injunction is "an extraordinary and drastic remedy" that should be granted only when the movant carries the burden of persuasion by a "clear showing." *Boucher v. Sch. Bd. of the Sch. Dist. of Greenfield*, 134 F.3d 821, 823 (7th Cir. 1998) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)). To obtain a preliminary injunction, a plaintiff must show that (1) he will suffer irreparable harm before the final resolution of his claim without a preliminary injunction; (2) traditional legal remedies are inadequate; and (3) his claims have some likelihood of success on the merits. *BBL, Inc. v. City of Angola*, 809 F.3d 317, 323–24 (7th Cir. 2015). After the plaintiff makes this showing, he must then demonstrate that the balance of harms tips in his favor and that the public interest favors the injunctive relief. *Id.* As I stated above regarding Walker's official capacity claims, the PLRA limits the scope of preliminary injunctive relief: such relief must be "narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

As discussed above, at this point I am not dismissing all of Walker's claims. But the claims that will require supplemental briefing are claims for *past* harm against defendant Cox. His claims for injunctive relief against the Special Needs Committee members are being

dismissed, and with it, any claim for preliminary injunctive relief he has. So I will deny his motion.

But even if the claims against the Special Needs Committee were ongoing, Walker has not made the showing necessary for the court to take the relatively extreme step of intervening in his specific medical treatments. The evidence presented by the parties about Walker's current course of care show that prison medical staff continue to treat his back pain in various ways, including medication, a TENS unit, and new mattresses. His current showing would not be enough to warrant this court intervening in his medical care before final judgment. I encourage Walker to continue to work with prison medical staff to obtain treatment for his back problem.

ORDER

IT IS ORDERED that:

1. Plaintiff La'Mont Walker's motions for a ruling on his motions, Dkt. 62 and Dkt. 65, are GRANTED.

2. Plaintiff's motion for summary judgment, Dkt. 38, is DENIED in part, and defendants' motion for summary judgment, Dkt. 46, is GRANTED in part, as discussed in the opinion above.

3. I will stay a decision on plaintiff's claims concerning defendant Cox's treatment from 2011 to May 2014, and from November 2014 to September 2015. The parties are directed to provide proposed findings of fact and supporting evidence concerning those time periods. The parties are free to submit supplemental briefs as well if they so choose. Plaintiff may have until November 27, 2017, to submit his supplemental materials. Defendants may have until December 11, 2017, to submit theirs.

4. Plaintiff's motion for preliminary injunctive relief, Dkt. 27, is DENIED.

Entered November 6, 2017.

                                          BY THE COURT:

                                          /s/

                                          _____
                                          JAMES D. PETERSON
                                          District Judge