IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LA'MONT WALKER,

                       Plaintiff,

  v.                                                    OPINION and ORDER

BURTON COX,                                         15-cv-686-jdp

                       Defendant.

---

      Pro se plaintiff La'Mont Walker, appearing pro se, is currently a prisoner at the Dodge County Detention Facility. Walker brought Eighth Amendment claims against Wisconsin Department of Corrections employees for their alleged failure to provide him an extra mattress and other accommodations for his chronic back pain when he was housed at Wisconsin Secure Program Facility. The parties both filed motions for summary judgment; I previously granted summary judgment to defendants on most of Walker's claims, including claims that defendant Dr. Burton Cox failed to properly treat him from May to November 2014. *See* Dkt. 69.

      For the rest of the time covered in Walker's complaint—2011 to May 2014, and November 2014 to July 2015—Walker alleges that Cox did little to nothing to help him. But neither party provided any detail about how and when Walker sought help for his back problems and how Cox responded. I directed the parties to submit a round of supplemental proposed findings of fact and supporting evidence concerning these two time periods. The parties have filed their supplemental materials.

      I conclude that the supplemental materials do not resolve Walker's claims. Instead, they raise complex medical issues concerning the adequacy of the treatment that Cox provided Walker. I will recruit counsel to represent Walker at trial.

UNDISPUTED FACTS

The following facts are drawn from the parties' summary judgment materials, and are undisputed unless noted otherwise.

Walker suffers from chronic back pain. In 2011 and 2012 he complained verbally to various officials, including defendant Cox, that the segregation mattresses were giving him back pain, and he requested an extra mattress. Cox says that he first became involved in the treatment of Walker's chronic back pain in July 2013, when Walker submitted a health service request (HSR) form complaining of back pain "for quite some time" because of the segregation mattresses. Cox responded by stating, "Extra mattresses are up to Spec Needs Comm." Dkt. 50-1, at 89. There is no indication that Cox referred Walker's request to the Special Needs Committee, a rotating group of medical and non-medical officials that decides prisoner requests for "special needs" or "comfort" items.

Cox ordered non-controlled pain medication for Walker for chronic pain treatment unrelated to his back pain several times. On November 25, 2013, Walker refused to be seen by HSU staff for his back pain, stating "I'm better now."[1]

On May 8, 2014, Cox saw Walker for complaints of spine pain. Cox assessed Walker with "chronic pain at the junction of the thoracic and lumbar spine due to musculoskeletal causes." Cox ordered an x-ray, referred Walker to physical therapy, and noted that he did not prescribe NSAIDS (nonsteroidal anti-inflammatory drugs) because they upset Walker's stomach. Walker had physical therapy sessions from July 8, 2014 until August 19, 2014.

---

[1] Walker disputes this proposed finding by saying that Cox didn't produce evidence supporting the proposed fact. But Cox did properly cite a medical note containing Walker's alleged statement. *See* Dkt. 50-1, at 11.

Following Walker's request for a TENS (transcutaneous electrical nerve stimulation) unit, Cox told him that he could not have the device in segregation, but that he could have it when he was in general population. Cox says that he believed that inmates were not allowed to have TENS units in segregation. Walker provides correspondence suggesting that inmates indeed were allowed at access to TENS units while they were in segregation; they just were not allowed to keep them when not using them.

On November 23, 2014, Walker requested an extra mattress. Cox referred that request to the Special Needs Committee. On December 4 and 17, 2014, Walker submitted HSR forms, asking for a TENS unit and an extra mattress. Cox responded that the issue had already been addressed. On January 7, 2015, Walker submitted an HSR form, stating that he had been discharged from physical therapy and asking about additional sessions. Cox responded that inmates get six initial sessions and the physical therapist can add six more if they request it, but that this wasn't warranted in Walker's case, due to his lack of progress. On January 25, 2015, Cox again ordered that Walker receive a TENS unit while he was in general population.

On May 24, 2015, Walker submitted an HSR form, complaining of chronic back pain and requesting a back brace and theraband. Cox responded that he did not recommend back braces and that therabands are usually ordered through physical therapy. In early June 2015, Walker again requested a theraband, and Cox granted this request. Cox left WSPF in July 2015.

After Cox left WSPF, Walker received various other types of treatment for his back, including ice, an extra pillow, a back brace, more physical therapy, an MRI, and several medications, such as amitriptyline (an antidepressant also sometimes used for chronic pain), cyclobenzaprine (a muscle relaxer), and tramadol (a narcotic pain reliever).

3

ANALYSIS

A. **Summary judgment**

Summary judgment is appropriate if a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When, as here, the parties have filed cross-motions for summary judgment, the court "look[s] to the burden of proof that each party would bear on an issue of trial; [and] then require[s] that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997). If either party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment against that party is appropriate. *Mid Am. Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995) (quoting *Tatalovich v. City of Superior*, 904 F.2d 1135, 1139 (7th Cir. 1990)). "As with any summary judgment motion, this [c]ourt reviews these cross-motions 'construing all facts, and drawing all reasonable inferences from those facts, in favor of . . . the non-moving party.'" *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008) (quoting *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 748 (7th Cir. 2007)).

The Eighth Amendment prohibits prison officials from acting with deliberate indifference to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). A "serious medical need" is a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. *Johnson v. Snyder*,

444 F.3d 579, 584–85 (7th Cir. 2006). A medical need is serious if it is life-threatening, carries risks of permanent serious impairment if left untreated, results in needless pain and suffering, significantly affects an individual's daily activities, *Gutierrez v. Peters*, 111 F.3d 1364, 1371–73 (7th Cir. 1997), or otherwise subjects the prisoner to a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). The parties do not appear to dispute that Walker's back pain was to a serious medical need.

To be considered "deliberately indifferent," an official must know of and disregard "an excessive risk to an inmate's health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Snipes v. Detella*, 95 F.3d 586, 590 (7th Cir. 1996). However, inadvertent error, negligence, gross negligence, and ordinary malpractice are not cruel and unusual punishment within the meaning of the Eighth Amendment. *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).

**B. 2011 to May 2014**

As stated above, I gave the parties a chance to beef up their summary judgment materials by explaining in more detail exactly how and when Walker asked for medical treatment and how defendant Cox responded, for two periods of time: 2011 to May 2014, and November 2014 to July 2015. Some parts of the timeline have become clearer but others have not.

Walker alleged that in 2011 and 2012 he complained verbally to Cox that the segregation mattresses were giving him back pain and that he requested an extra mattress. But neither side explains anything more about what happened in this time frame, and the medical records do not show any formal requests made by Walker during this time.

5

Cox says that the first time that he treated Walker was in July 2013, when Walker complained about back pain and asked for an extra mattress. In his supplemental brief, Cox says, "From that time forward, [he] diagnosed Walker with chronic pain at the junction of the thoracic and lumbar spine due to musculoskeletal causes." Dkt. 75, at 7. But that is not an accurate restatement of the facts. Cox did not diagnose Walker until May 2014. In July 2013, Cox responded to Walker's health service request by stating that mattress requests were matters for the Special Needs Committee. But as opposed to Walker's later requests, Cox did not forward Walker's first request to the Special Needs Committee. Nor does it appear that Cox did anything to assess or treat Walker at this point. And, as stated above, Walker says that he told Cox about his back problems in 2011 and 2012 but Cox didn't take any action then either. So a reasonable jury could conclude that Cox knew that Walker was suffering from back pain yet did not do anything about it.

In his proposed findings of fact, Cox also states, "The Court has already ruled . . . that an extra mattress was not the only appropriate treatment for his back pain and dismissed this portion of plaintiff's claim against Dr. Cox." Dkt. 82, at 2. Cox is correct that I previously ruled that Walker cannot prevail on his Eighth Amendment claim just by showing that Cox didn't give him a mattress, because the Eighth Amendment does not entitle an inmate to demand a specific type of care. *See* Dkt. 69, at 8–9. But I also stated that "I will not dismiss the entire case just because Walker focuses largely on the extra mattress. The question is whether defendants were deliberately indifferent to his serious medical need." *Id.* at 9.

I dismissed Walker's claims about Cox's treatment from May to November 2014 because Cox treated Walker in various ways, including referring Walker's mattress request to the Special Needs Committee. Walker alleges that for the period of time before Cox started

6

this treatment, Cox did *nothing* to help him, not even make a referral to the Special Needs Committee. A reasonable jury could infer from these facts that Cox chose to ignore Walker's back pain, but this is not the only inference that could be drawn. The parties continue to dispute how often Walker actually alerted Cox to his pain, and the record shows that Cox provided Walker with pain medication for other problems and eventually treated his back pain. A jury could conclude that given these other aspects of Cox's treatment, he was not subjectively deliberately indifferent to Walker's back pain at the earlier stages of the case. Walker also appears to have at one point stated that he "was better," which could explain Cox's lack of treatment for at least part of the time in question. Because there are still disputed issues of material fact, I will deny both sides' motions for summary judgment on Walker's claim against Cox for 2011 to May 2014.

**C. November 2014 to July 2015**

As discussed in my previous order, Cox eventually treated Walker with physical therapy, an x-ray, a TENS unit, and referrals to the Special Needs Committee. I granted defendants' motion for summary judgment on the Eighth Amendment claims against Cox covering this period of time, from May to November 2014.

But I asked for supplemental materials regarding Cox's treatment after November 2014, because Cox appeared to have done nothing for Walker other than issue a theraband in June 2015. Cox stated in his declaration that he "had nothing more to offer Walker" at this point. Dkt. 52, at 5, ¶ 20. I stated that this lack of treatment seemed questionable given that prison officials treated Walker in various ways after Cox left WSPF. *See* Dkt. 69, at 10–11. Walker later received ice, a back brace, several medications, including cyclobenzaprine (a muscle

7

relaxer), tramadol (a narcotic pain reliever), amitriptyline (an antidepressant sometimes used for chronic pain), and an MRI.

In his supplemental filings, Cox adds that that in January 2015, he prescribed Walker a TENS unit for when he was in general population. Cox also explains why he did not order the various treatments that other providers did after he left the prison; he did not believe that any of those treatments were warranted given Walker's diagnosis. For instance, Cox believes that amitriptyline would be inappropriate for Walker because he suffers from GERD, he did not prescribe tramadol because narcotic medications can be detrimental in treating back pain from musculoskeletal causes, muscle relaxers should only be prescribed for short-term use and not for chronic pain, and items like ice, a back brace, or extra pillows were not appropriate for Walker's condition either. His position is that "some types of chronic pain cannot be successfully treated." Dkt. 77, at 7.

Whether Cox was deliberately indifferent to Walker's back pain is not a question that I can resolve at summary judgment. I cannot simply credit Cox's stated rationale for his decisions and dismiss the case. *See Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016), as amended (Aug. 25, 2016) ("[E]xcept in the most egregious cases, plaintiffs generally lack direct evidence of actual knowledge. Rarely if ever will an official declare, "I knew this would probably harm you, and I did it anyway!"). Cox is correct when he says that I must look at the totality of care that he provided Walker. *Id.* And I have already concluded that Cox was not deliberately indifferent toward Walker during a portion of his care, because he indeed attempted several different ways of treating Walker.

But a prison medical provider can still violate the Eighth Amendment despite providing some care, if the provider's decision is "such a substantial departure from accepted professional

8

judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment," or the provider "persists in a course of treatment known to be ineffective." *Id.* at 729–30. That is a matter in dispute. After his attempts at treatment in May to November 2014 did not work, Cox provided only a theraband and access to a TENS unit, treatments that already appeared to be ineffective in treating Walker's pain. Later providers treated him with serval additional types of treatment that Cox says does not meet the standard of care. Walker, as a pro se litigant, is not in position to dispute that expert testimony, but the fact remains that other medical officials did provide this treatment, which suggests that it could have been appropriate.[2] In addition, the parties dispute whether Cox properly limited Walker's access to the TENS unit to times when he was in general population. It appears that inmates were allowed access to TENS units when they were in segregation. Cox says that he didn't know that, but a jury would not have to accept that explanation.

A reasonable jury could look at that facts here and conclude that Cox was warranted in failing to prescribe any of the treatments that later providers did. So I will deny Walker's motion for summary judgment. But I remain unconvinced that this is the only inference that a jury could draw. Another inference could be that in November 2014, Cox simply stopped trying new treatments after his initial attempts failed.

---

[2] Walker contends that Cox also disregarded his condition by failing to ensure that he received "skilled" physical therapy as recommended in his initial evaluation for therapy. *See* Dkt. 71, at 13; Dkt. 73-5, at 4. I take Walker to be saying that the physical therapy he actually received was *unskilled* or in some way deficient compared to what the evaluator suggested. But Walker does not provide any evidence suggesting that this is a reasonable reading of the evaluator's note. The evaluator suggested "skilled" therapy, and Cox ordered treatment by a physical therapist, meaning someone who is skilled in that line of work.

This case ultimately boils down to the types of issues that the Court of Appeals for the Seventh Circuit has suggested would benefit from recruitment of counsel or appointment of a medical expert. *See, e.g.*, *Perez v. Fenoglio*, 792 F.3d 768, 785 (7th Cir. 2015) (litigation is "even more challenging in cases, like Perez's, where complex medical evidence (including expert testimony) is needed to assess the adequacy of the treatment received"); *Garner v. Sumnicht*, 554 F. App'x 500, 501 (7th Cir. 2014) ("Under these circumstances, the district court should have attempted to recruit a lawyer for Garner, who appears to be unable to present a case dependent on medical evidence—yet has enough of a substantive claim that the court cannot dismiss it as obviously deficient."). Although Walker has not requested the court's assistance in recruiting him counsel in this case, I conclude that his claim about Cox's treatment after November 2014 has potential merit but that it would be very difficult for him to proceed further without the assistance of counsel. So I conclude that it is appropriate to recruit counsel to assist Walker with the complex medical issues raised by his claims surviving summary judgment. Accordingly, I will stay the proceedings pending recruitment of counsel.

ORDER

IT IS ORDERED that:

1. Plaintiff La'Mont Walker's motion for summary judgment, Dkt. 38, is DENIED.

2. Defendants' motion for summary judgment, Dkt. 46, is GRANTED in part and DENIED in part, as discussed in the opinion above. The case will proceed to trial on plaintiff's claims that defendant Cox was deliberately indifferent to his back pain from 2011 to May 2014 and from November 2014 to July 2015.

3. Proceedings are STAYED pending recruitment of counsel for plaintiff. If I find counsel willing to represent plaintiff, I will advise the parties of that fact. Soon thereafter, a status conference will be held to establish a new schedule for resolution of the case.

Entered March 21, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge